OPINION
{¶ 1} Defendant-appellant, Timothy D. Phillips, appeals his conviction in the Middletown Municipal Court for domestic violence.
 {¶ 2} On February 20, 2007, appellant was arrested and charged with one count of domestic violence in violation of the City of Middletown Codified Ordinances 636.17(a), for striking his wife Terri during an argument at their house. During a bench trial, appellant *Page 2 
admitted striking Terri but claimed he was acting in self-defense because Terri was hitting him with a frying pan. The municipal court found appellant guilty as charged, stating:
 {¶ 3} "There's no question here that * * * the defendant in the case did strike his wife on the day in question. The question [is] whether he did so in self-defense. Implicit in the force and response to danger element of self-defense is the requirement that the degree of force be proportionate to the threat. It is reasonable to argue that someone is hitting you with a frying pan you can at least take some reasonable action to stop that. When attacked one must retreat if possible. The exception of the duty to retreat is when one is in one's own home or business. Persons who through no fault of their own are attacked in their home may stand their ground, meet force with force, and if necessary kill the assailant without any duty to retreat. * * * Mr. Phillips testified that one of the persons he was trying to protect was his 9 year old daughter. A person in good faith and upon reasonable grounds if they believe a family is in eminent danger of death or serious bodily harm[,] such person may use reasonably necessary force to defend the family member to the same extent as the person being entitled to use force in self-defense. * * * [I]t's a close call, Mr. Phillips, it really is. But, I don't know if these circumstances that you could not have avoided the entire situation by getting out of there without having to strike her[.] [S]o I'm going to make a finding of guilty because you did strike her."
 {¶ 4} Appellant timely appealed, raising the following assignment of error:
 {¶ 5} "THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 6} Appellant argues that the municipal court lost its way in finding that the affirmative defense of self-defense was not met.
 {¶ 7} When reviewing whether a conviction is against the manifest weight of the evidence, this court, reviewing the entire record, weighs the evidence and all reasonable *Page 3 
inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Thompkins, 78 Ohio St.3d 389, 387, 1997-Ohio-52. When reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 8} To establish self-defense, the defendant must show that (1) he was not at fault in creating the violent situation; (2) he had a bona fide belief he was in imminent danger of death or great bodily harm and his only means of escape was the use of force; and (3) he did not violate any duty to retreat or avoid the danger. State v. Williford
(1990), 49 Ohio St.3d 247, 249. If the defendant fails to prove any one of these elements by a preponderance of the evidence, he has failed to demonstrate that he acted in self-defense. Id.
 {¶ 9} A person who, through no fault of his own, is assaulted in his home may stand his ground, meet force with force, and if necessary, kill his assailant, without any duty to retreat. State v. Thomas,77 Ohio St.3d 323, 327, 1997-Ohio-269. "There is no rational reason for a distinction between an intruder and a cohabitant when considering the policy for preserving human life where the setting is the domicile[.] [A]ccordingly, * * * there is no duty to retreat from one's own home before resorting to lethal force in self-defense against a cohabitant with an equal right to be in the home." Id. at 328.
 {¶ 10} At this juncture, we note that in State v. Garrette (Feb. 2, 1983), Clinton App. No. CA-484, we held that "States are split on the issue of duty to retreat in one's dwelling where the aggressor also lives in the dwelling. We find the better view to be that where both parties have an equal right to be in the dwelling, a person must retreat if possible before killing an assailant." Id. at 6. In light of the supreme court's holding in Thomas, our holding in *Page 4 Garrette is no longer valid and has been implicitly overruled.
 {¶ 11} It is undisputed that appellant struck Terri and that she hit appellant with a frying pan several times. Their versions as to how it came about, however, could not be more diametrically opposed. Terri testified that upon verbally confronting appellant about his treatment of their oldest daughter, "the next thing [she] kn[e]w," she was slapped down to the ground, punched in the face and the head, kicked in the back and the stomach, and slapped all over. Then, as she was running from appellant, Terri found herself in the kitchen. As appellant was coming toward her, Terri grabbed a frying pan and hit him on the head a couple of times. She then dropped the pan, ran, and called 911. During the commotion, a guardian ad litem ("GAL") called several times but appellant prevented Terri from talking to the GAL by hanging up the phone each time. Terri suffered a dislocated finger, a bruised face, and a broken blood vessel in one eye.
 {¶ 12} Appellant testified that following an argument with the oldest daughter, he looked for Terri throughout the house for 15 to 20 minutes so that they could sit down and discuss their daughter's behavior. While he was looking for Terri, the GAL called. Appellant told the GAL that things were not going well, and that he would call her back in ten minutes after he had a chance to talk to Terri. While on the phone with the GAL, appellant walked into the kitchen where Terri was. Appellant hung up. Upon hearing from their oldest daughter that appellant told the GAL they were fighting, Terri "immediately reached over," grabbed a frying pan, charged and attacked appellant, and hit him in the head five times. Appellant did not retaliate and instead backed up in the dining room. Terri kept attacking and hitting appellant. By then, their nine-year-old daughter had come home. Upon backing up into the nine-year-old child, appellant asked Terri to stop before the child would get hurt. Terri did not stop. At that point, appellant grabbed Terri by the back of the head, and tried to get her to stop by hitting her once. As Terri kept hitting him, appellant hit her two more times. *Page 5 
Terri went down on her knees, dropped the pan, and appellant walked away.
 {¶ 13} On cross-examination, appellant testified that as Terri kept attacking and pursuing him, it was impossible to leave the house, "[he] had no chance" and "got as far as [he] got before [he] ran into his daughter." In fear for his life (Terri had threatened to kill him two weeks earlier), and fearing for their nine-year-old daughter, appellant testified that the only thing he could do to stop the attack was to do what he did.
 {¶ 14} By stating "But, I don't know if these circumstances that you could not have avoided the entire situation by getting out of there without having to strike her," the municipal court found that appellant failed to meet the second prong of the affirmative defense of self-defense, specifically "his only means of escape was the use of force." Upon thoroughly reviewing the record, we cannot say that in so finding, the municipal court lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 {¶ 15} We therefore find that appellant's conviction for domestic violence is not against the manifest weight of the evidence. Appellant's assignment of error is overruled.
 {¶ 16} Judgment affirmed.
 BRESSLER and WALSH, JJ., concur. *Page 1